Good afternoon, P. Joseph Sandoval. May it please the courts, I'm representing the petitioner Katerina Filimonova. This is a case arising from denial of a request for continuance in the immigration court in San Francisco. The Board of Immigration Appeals affirmed, although the Board of Immigration Appeals did find that the immigration judge erred in finding that Ms. Filimonova had filed a frivolous asylum application. Here, Your Honors, the petitioner had figuratively been abandoned by her counsel at the doorstep to the courtroom. She had requested a continuance, a brief continuance, in order to have counsel present for what appears to be a very difficult case, a case involving fraud, and the stakes in an asylum context, as we all know, were very high. The immigration judge denied her request to continue this case. How many years had it gone on? The case started in 1999, Your Honor. It's remarkable, owing to time, in my observation. That is true. She made no effort to be sure a lawyer would be there in advance? According to her statements to the court, she had hired a new lawyer because she had a long list of lawyers that weren't properly representing her interests before the immigration court. The immigration judge received a motion to continue the case by this new lawyer, Mr. Belinsky. Mr. Belinsky advised the court that he had a personal obligation, that it was impossible for him to appear to court. The judge denied that, and that motion to continue was filed. I mean, it was the most flimsy kind of excuse by the lawyer. I have personal obligations. The most unspecific kind of request. I would agree, Your Honor, and we're not defending it. No wonder the I.J. was fed up. Well, let me ask you. Yes. When did he ask to have the continuance based on the personal obligations? The continuance was filed May 25th of 2004. That's in the record at page 190. That's exactly right. And didn't the judge immediately deny it? Yes. It was denied on May 26th of 2004. And wasn't that counsel with the plaintiff on August the 14th of 2003 when this hearing was set? Yes, Your Honor. That's correct. So the hearing was set in August of 2003. It was set for nearly a year away. And just May before, counsel comes in and says, I can't come due to unforeseen personal obligations. And the judge says, no, I told you in 2003, August, this, there will be no more continuances. What happened? That's certainly a failing of the prior counsel, Your Honors. But now let me ask you. Here we have February 99, your client appeared before the I.J. that wasn't this one, unrepresented by counsel, and the I.J. at that point said, give me more time, get some counsel. Did that happen? That's a very common practice in immigration proceedings, Your Honor. May 18th, 1999, counsel comes, admits to the allegations in the notice to appear, admits that she had been denied asylum by the officer, but doesn't have anything to present. So then the I.J. says, give me more time. Again, Your Honor, that's a very common practice, because when you do plead to these allegations, at that time, the immigration judge will reset the case for you to file relief. And that happened 10 different times, where the old I.J. had this person in front of them with counsel, without counsel, and each time said, we'll give you some more time. I respectfully disagree with that. Now, the immigration judge indicated in his oral decision that there were 10 continuances. And when you look at the record, that is wrong. And in fact, the Immigration and Customs Enforcement... No, I don't want to argue about 10 or 8 or what, because I counted them too. How many were there that were actually the result of a request for a continuance by the Petitioner? On, well, on April 21st, 2000, there was a joint motion for continuance orally made before the Immigration Court. Both the immigration attorney indicated we would benefit from a continuance in this case. And how many were there that were strictly traceable to the Petitioner? Well, from the Petitioner, I would say there were three, but those were requests made by her lawyers for not being prepared. They were not made specifically for her. And her original lawyer was Terrence McGuire. Is that right? That's correct. Has Terrence McGuire been disbarred by this Court? Absolutely. He has a long history of problems with this and other courts. Now... Has he been disbarred by the Immigration Court, do you know? Yes, he has. On September 8th of 2000, ICE requested a continuance. They filed a motion to continue with the Court. It was a written motion indicating that they needed more time to present a witness. This was a declaration that was filed without or, excuse me, a motion that was filed without a declaration signed under the penalty of perjury, which is not required from officers of the Court in the immigration proceedings. Again, on August 24th of 2001, and this is at the record at 241, the Immigration and Customs Enforcement filed another motion to continue, again saying we are not prepared to go forward because our witness is not prepared. Same facts, same allegations that were made. The bottom line is that the immigration judge's counting was wrong. Absolutely wrong. Grossly wrong. I mean, fairly grossly wrong. Yes. And there was a request to change venue, and then it was changed. That was hers, and there was some kind of illness thing in there. There was a change of venue that was made. That's in the record at 237. That was August 27th of 2001. Now, when you look at the record, there's a big blank spot, a black hole between October 4th of 2001 and January 6th of 2003, where there were no hearings held, but there were continuances granted, cases being reset. We're not sure if it was a request by the government or not or if it was by the Executive Office of Immigration Review, but there were three parties here. Well, but as I understand it, the October 4th, 2001, the continuance was granted to December 23rd, 2002, and that was because counsel did not appear by telephone when called by the judge, and therefore the judge again gave a warning. We're going to get this thing done. Then he made it. He made the continuance until December 23rd, 2002, and then gave counsel notice that the hearing was changed until January 6th, 2003, which is at the time when McGuire and the plaintiff did not or the Petitioner did not appear again on January 6th, 2003. With all due respect, Your Honor, I believe that you may have the facts wrong here, because on October 4th of 2001, the case was reset to September 3rd of 2002 because Mr. McGuire failed to show, and that's on the record, administrative record at page 231. Then, and again, we don't know why because it's not memorialized in the transcript, on August 28th of 2002, the Executive Office for Immigration Review reset the case to December 23rd of 2003. This was done without a hearing, without either the attorney or Ms. Hilleman over the President. How about 3-2? 2003. Well, they had a hearing on January 6th of 2003. Now, that is because, again, without being on the record, without being in front of the court, either with Ms. Hilleman over or her lawyer, the court on its own, for reasons that are unexplained in the record, in which we could not find through the Freedom of Information Act or in the administrative record, the court on its own reset the case to January 6th of 2003, 11 months earlier, and she didn't show up. Because her lawyer did not give her notice. Her lawyer being McGuire. Mr. McGuire did not give her notice. And that was reopened. And then it was reopened unopposed by the Immigration and Customs Enforcement. So, again, I just want to say that we have three parties here. We have the court that is responsible for changing the case because Judge Gordon originally retired, so it was continued. We have something happening between October of 2001 and January 6th of 2003 with the immigration court shuffling its cases. We also have the immigration attorney, the government attorney, requesting a continuance in September of 2000, August of 2001. There was a joint motion in April of 2000. And I just want to add something here. The immigration judge had admonished Ms. Villanueva because her counsel had failed to file the motion as required by the local rules because it didn't have a declaration signed into the penalty of perjury, and it was filed with not beyond 30 days. You have 30 days to file a motion before your individual hearing date. But when you look at the record, the ICE counsel filed their motion, their request for telephonic appearance of their witness, and that was filed May 18th of 2004, less than 30 days before the hearing. Let me ask you a question. Yes. What happened, nonetheless, was that the lawyer didn't show up. Yes. Although ordered to show up. Yes. And the question is, at what point does the – can the I.J. hold – essentially, he said – my understanding was he didn't believe her. He said that. I find you not credible, i.e., I take that to mean I didn't – he didn't believe that this lawyer – that she didn't know the lawyer was going to come, that there was – he seemed to believe that there was some sort of cahoots going on or something – some plan to not show up. Now, did he – did he have – suppose that did happen. At that point, he could have denied the continuance, right? Well, there's a case from the Ninth Circuit, and it's in our supplemental brief, Hernandez-Gill v. Gonzales, 476 F. 3rd, Ninth Circuit, 2007, where we have very similar situation, where the attorney failed to show on the day of the hearing. And there, the Ninth Circuit found that it was abuse of the judge's discretion to deny a request by the alien for a continuance in that case. Well, what I'm asking is this. Could he – suppose that – although he seemed to intuit something like this happening, and it's true that there was at least one other case where something similar was going on, and the court says, well, essentially, at least you should have asked more. And in this instance, he didn't make inquiry either of her or get the lawyer in there or any – what should he have done, I guess, is my question. Suppose he actually believed that there was some chance, and there was some chance, that this was a plan between her and her lawyer to get further delay. Okay. Well, first of all, there's nothing in the record to show that she was doing anything. It was not a dilatory factor on her part that she was doing anything. He believed that, at least in part, because the whole thing had been delayed so long. And he could also have pointed, I suppose, to the fact that it was an awful flimsy attempt to get a continuance if he was really trying to get a continuance. The lawyer, I mean, when he's – no lawyer ever really wants a continuance, just says, I have personal problems. So suppose he intuited that there might be more there than meets the eye. Then what? Well, I think that he would have to explore that, and he would have to give the petitioner an opportunity to respond to that. But she's saying I'm not going to say anything without my lawyer. Well, because she's not the lawyer. She's not able to talk about what these personal obligations are. And we don't want to punish, or we shouldn't punish, petitioners, aliens in immigration proceedings for the misdeeds or the bad representation by their attorneys. And we see that happen all the time. We certainly should have punished the lawyer. Pardon? We certainly should have punished the lawyer. Well, unfortunately, the immigration courts at that time did not have power to sanction these lawyers for doing this. Sorry. But, you know, if you take a look at the Hernandez-Gill case, the facts are very similar. There's another case that we think is on point as well, and that's Mendoza v. McCasey, 509F3rd, Ninth Circuit 207. This is a case where, in Los Angeles, Judge Fong had required an alien to move forward without an attorney, effectively depriving him of his statutory right to have a lawyer. The immigration judge, Fong, mischaracterized the record, like we see here with Judge Cui in San Francisco, indicating that the government's or, excuse me, the petitioner had a right to have a lawyer. And the court said that's not appropriate. You have to allow the continuance. So what should the I.J. have done? What would you have advised him to do to both protect her right to counsel, at the same time protect against some collusory attempt to generate delays? Could he have held another hearing in which, if she didn't show up with a lawyer, that would have been the end of it? Or could he have held a hearing in which he investigated whether the last one was with a lawyer and now going over whether really she didn't know the lawyer was going to show up or what? What could he have done? Or what should he have done? Well, first and foremost, I think that the judge should have exercised some restraint and not admonished and harangued and said things like, this is shameful, you're abusing the system. He had clearly lost control, as Judge Fong did in Mendoza. So, number one, I think that he should have exercised some restraint on the bench. Secondly, given the complexity of this case, the fact that the government was alleging fraud, the fact that the government had a witness scheduled from the Department of Justice to testify as an expert regarding forensics, there's no way that this lady from Russia could have adequately cross-examined this expert witness. The judge should have realized that, taken a look at the entire case, the whole  And so I think that he should have said, am I going to punish Ms. Villaminova because she has had a string of bad lawyers, and am I going to make her have to represent herself, form objections to an expert government witness from the Department of Justice, or am I going to give another day? He should have given another day. The problem is that he didn't believe that. He said that. He said, I don't believe it. Now, you say quite promptly, I think, but he had no basis for not believing it. So the question is, what do you do then? I think that you, in the exercise of caution, in order to, especially when you look at the potential consequences of getting sent back to Russia for somebody that's saying, look, I was persecuted in the past, and I will be persecuted in the future, when the consequences are so great, this is a time for the judge to say, in the interest of justice, I will grant you a time to have a lawyer here to represent you and to cross-examine this expert witness. Thank you very much. And that is my case. May it please the Court. My name is Tiffany Walters Kleiner, and I represent the Respondent of the United States Attorney General. Let me ask you quite directly. I mean, on the one hand, you have these interminable proceedings, part of which are the responsibility of the government. And on the whole, you get the impression the INS is pretty sloppy about how it proceeds. But finally, you have the hearings, and then the lawyer doesn't show up. And this judge behaves quite intemperately. And that's what you've got to defend, not the long nine years or whatever it took to get there. But he seems to lose control. He is not paying attention to what the thing in front of him is. And that's what you have to defend. Now, tell us why we should accept that kind of behavior from the judge. Well, the immigration judge had, on October 4th, 2001, had a ---- I know he said that, but this is what he's doing now. And in front of him, the lawyer is not there and the woman is. Well, the lawyer previously failed to appear. Mr. McGuire failed to appear. We can all fault the lawyer terribly. But McGuire, we know, has been disbarred by, I gather, by this Court and by the Immigration Court. Is that true? That's true. Absolutely. And everybody seems to recognize that, and that's why it was reopened without opposition. So isn't everything before that kind of washed out by the fact that this lawyer wasn't ---- was acknowledged in this very case to merit reopening and to generate an effective assistance? Well, the immigration judge at that point did warn Ms. Filamenova that she was on notice, that at her next hearing she could find different counsel because ---- And she did. She got different counsel. Yes. All right. So then what? Well ---- No, I mean, why is this case best looked at from that point forward? Why are we worrying about all the earlier stuff? Because the earlier stuff establishes a pattern of delay. But with a bad lawyer. So, I mean, it really shouldn't be ---- Well, not all of the continuances could be attributed to the bad lawyer. Ms. Filamenova, I think on at least two occasions, had alleged that she was ill and unable to appear. One of the occasions, her attorney requested a continuance to allow for expert testimony. At the two occasions that DHS did or the INS did request a continuance, one of them was for rescheduling for a morning hearing versus an afternoon hearing because the expert testimony was occurring telephonically from the East Coast. DHS or INS was not seeking to delay the case, but simply to reschedule to allow for that expert testimony. And given the lengthy history of the case and the fact that Ms. Filamenova was warned on two occasions that she would not be granted further continuances ---- But if one takes things on their face and doesn't start, you know, sort of speculating about what might be going on, her lawyer made motion for continuance. It was denied. As far as one knows, she said, I expect him to come, and he didn't come. He was told to come at that point, and he didn't come. So why is it her problem at that point? Well, at that point, Ms. Filamenova had the opportunity to go forward and testify on her own behalf in support of her application. I'm sorry. Speak up, please. I'm sorry. At that point, Ms. Filamenova could have ---- she ---- the immigration judge instructed her to go ahead and testify on her own behalf and represent herself. But why did she have to proceed without counsel? Because she had been granted numerous delays and the ---- What? Because she had been granted numerous delays in the past, and the proceedings had continued on for five years, and the immigration judge ---- So ultimately, your position is that if an attorney is ordered to come and doesn't come, that ---- and assuming that she's in the utmost good faith and believing he was going to show up, the I.J. can simply go ahead without the lawyer. Isn't there ultimate ---- isn't there four or five cases in this Court saying it isn't so? Sure. It's a facts and circumstances inquiry. And in this case, because there had been a prior situation where the attorney hadn't showed up and ---- But it was a different attorney, and he was acknowledged to be giving ineffective assistance, and he's been disbarred by this Court and by the immigration court. That's true. So let's start from the time that he's no longer there. All right? From thenceforward, what ---- how does this case, given the case law, justify going ahead without the lawyer? I think the critical distinction between this case and Hernandez-Gill and Mendoza-Murray is that ---- And the Rahm case, which was the most recent one. And the Rahm case as well is that Petitioner had previously been warned that at the next hearing she would be going forward pro se if she did not appear with counsel. But she expected her lawyer to come, as appears on the record. She said that's what she said. Yes. He was ordered to come, and if he's not here, there must have been something terrible because she showed up expecting him to come. And it would have been helpful had Ms. Filamenova presented evidence of what had happened. In what? She put in evidence. She didn't know he was coming. What evidence could you put in? Well, after the fact, she is not alleged ---- You mean after the fact. Well, she's not alleged that he was ineffective in failing to appear. She's not filed a complaint against him. She's not taken those additional steps in which it would allow the counsel the opportunity to respond to Ms. Filamenova's allegations. So that's one thing she should have done, was to ---- She could have, in her appeal to the board, she could have come forward with a complaint against Mr. Bulitsky after he failed to appear and presented some ---- She would have had a final motion to reopen or something like that, because there would have to be evidence at that point. Correct. Yes. But she has not done that. In fact, she continues to assert that there ---- she's not alleging ineffective assistance of counsel. Really, the issue is with her attorney who failed to appear, and she is not arguing that that is the reason why ---- But these facts are so similar to the facts in Hernandez's case and some others. And in none of those cases did anybody prove an effectiveness. They just proved that the lawyer wasn't there and that they shouldn't have had to go ahead without them. That's true. Of course, both of those cases had, because it's a facts and circumstances inquiry, I believe in Hernandez's case there was some evidence that the lawyer was in the building and that the immigration judge took no steps to figure out where this was going on. Here in Mendoza, there was an ex parte conversation between the immigration judge and the lawyer, and there were some allegations between the lawyer and the alien at that point as to who was at fault in the situation in the case. Both of those cases involved situations where the immigration judge had really readily available steps that he could have taken to attempt to figure out what was going on. Here, the immigration judge had previously continued it based on the failure of counsel to appear. And the same set of circumstances, again, presented the immigration judge. And at some point, there has to be a final resolution to the case. And at that point, the immigration judge reasonably exercised his discretion in determining there was no good cause for further continuance in this case. Counsel, if the Petitioner had been represented by somebody who hadn't been disciplined by the Ninth Circuit in the prior cases, prior to the motion to reopen, would this be a different case than this case? I'm not sure that it would, because, again, Ms. Filamenova is on notice. And you have two separate attorneys, and obviously the prior effective assistance of counsel to the prior attorney can't be attributed to the second attorney. But yet, Ms. Filamenova was on notice that the immigration judge had continued the case as long as he was willing to do so, and that she should take steps to ensure that she was able to go forward in her next hearing. How much time did the Petitioner have from the time she knew the hearing was going to go forward until June 4, 2004, and it did go forward? I believe the immigration judge's order was issued nine days before the marriage. But is there any evidence that she knew that her lawyer wasn't going to come? He was ordered to come. I mean, it was ordered not to. His reason for a continuance was denied. Is there any evidence that she knew he wasn't going to show up, or that he knew he was going to show up? Is there any evidence as to what she knew? The record is silent on that. I would like to emphasize again that Mr. Belitsky was the attorney at the last hearing and not Mr. McGuire. Yes. So what are the factors that you suggest weigh in favor of sustaining the IJ's discretionary decision? I mean, we have factors, inconvenience to the IJ, that may be so. But we also have other factors, the nature of the evidence presented. Do we even know what the nature of the evidence to be presented was? Well, we don't because Ms. Villanueva refused to testify at her hearing. So it's very hard for the IJ then to have made that determination. How about whether the need for a continuance was based on the alien's unreasonable conduct? Do we have any evidence other than what we've talked about here about that? We simply know that Ms. Villanueva was warned that she would go forward at her next hearing, and her counsel failed to appear. And the length and the number of continuances previously granted, there's been back and forth. Some say three, some say ten. But nonetheless, the honest truth is there have been some before. But if we look very carefully at this particular record, the person representing her before has been disciplined by the court. So what we really have then is that question that I present to you very straight. Does it make a difference that the person who just simply did not do anything, whether it's ten or three or whatever continuances, and the fact that he was then disciplined, does that give her an up for a continuance on this particular occasion? I believe it's a relevant factor. However, I would, again, emphasize that the prior continuance is granted even when the petitioner is represented by Mr. McGuire. We're not all due to Mr. McGuire's delay. Several of them were due to requests for a petitioner to delay due to medical reasons or to continue. But some of them were. Some of them were due to the fact that he didn't show up or he didn't or he showed up and said I'm not prepared. One was due to his illness. One was due to his failure to show up. And one was due to his request that it be continued to allow for an expert who was not available that day. So it's a complicated mess overall. So it is. I would also like to emphasize that Ms. Fulminova has not demonstrated prejudice. She refused to testify when presented with the opportunity multiple times by the immigration judge. The immigration judge was probably a reasonable decision, wouldn't you think? She was about to be faced with an expert evidence of fraud and negligence. And if she had, you know, made a document, how was she supposed to do anything with that? She would have been able to present her asylum claim. She had a fully fleshed out asylum application with a detailed personal statement. And at that point, if she had done that, then she would have had no choice but to file a motion to reopen or something to that effect. Yes. And she could have, had she gone forward and felt she had been prejudiced by the absence of counsel, she could have complained at that point. But because she chose to not present any evidence at all in front of the immigration judge, we have no idea what would have happened at that hearing. And that decision not to come forward with any ---- Did she refuse? Was she asked any questions related to the continuance as opposed to related to the merits? I mean, this is one of the problems with the judge flying off the handle the way he did. If he had just calmed down for a minute and said, I want to ask some questions about how this all came about, you know, did you have an expert set up? You know, were you in contact with a lawyer? Did you know the lawyer wasn't going to come? And so on. We might have been able to proceed a lot more sensibly, but he just kind of flew off at that point. It would have been difficult for him to ask questions given that Ms. Philman never refused to even raise her hand to take an oath. Well, but this wasn't at the point of an oath. It was really a question of just ordinary inquiry, you know, free, I mean, treating her as the lawyer rather than as the client at that point to find out what was going on. Sure. Had inquiry could have been possible at that point. I think reading just the transcript, obviously I wasn't there and that's all I've got to go on, is that every time the immigration judge began to address her, she refused to make any statement in the absence of her counsel. So I think that impeded the inquiry at that point. Thank you very much. Oh, I'm sorry. Do you have any more? You have more than a half percent. I would just also note that to the extent that Ms. Philmanova argues that the immigration judge was biased against her, the record reflects simply statements at most of impatience, dissatisfaction or annoyance, which have been found not. Back for me to the prejudice question. What do you understand the prejudice requirement should be? I mean, here we do have a situation where, and let's leave out the fact that she could have testified, because that was a judgment she made essentially to assert her right to counsel. So, but in terms of whether the lawyer could have done her any good at that point, it seems quite obvious that this was a very fact-intensive, technical problem. Whether the lawyer would have been able to help her had he appeared?  Right. I think it's essentially very difficult to determine in the absence of any testimony on her part without the lawyer whether or not the lawyer would have been able to assist her or whether she would have been able to explain her case adequately. We can't know in the absence of her testimony. She did file a motion to reopen a pro se. She was fluent in English and had taken steps to – she was able to engage with the immigration judge in the hearing. So I would assert that she had some capability to present her case, and it's impossible to determine what the difference would have been without knowing how she would have testified in the absence of counsel. Okay. Thank you very much. Thank you very much. We cannot allow a myopic insistence upon expeditiousness to render the right to counsel an empty formality. Did you want to address the prejudice question? How much – what does our case law say about prejudice under these circumstances? That's kind of a vacuum. Hernandez's guilt was the last court that I could find that addressed the prejudice issue, and it states, It is unsettled whether there must be a showing of prejudice where, as in this case, counsel has been effectively denied. Here, because we conclude that Mendoza – and this is a – that's Mendoza citing Hernandez's guilt. Here, because we conclude that Mendoza was clearly prejudiced by the denial of his I believe unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removable proceedings. This is, I believe, the last statement. But so assuming for now that you have to show prejudice, what kind of prejudice do you have to show? Well, I think that this case is very clear regarding prejudice. You've got a nonlawyer from another country, English as their second language, being thrown to the lions, potentially, with having to make objections, foundational objections, relevancy objections, to cross-examine an expert witness from the Department of Justice that is – has years of experience. But the bottom line is we don't know whether it all would have made any difference at all. We do know that she might have been better off with a lawyer in trying to fix it. But suppose we thought – suppose this was just obviously a forgery and nothing that she did would have made a difference anyway. Well, you have withholding of removal, which she applied for, which is a nondiscretionary form of relief. You have convention against torture, which is a – You're saying there are other things she could have done. Yeah. There's a mandatory – it's a mandatory form of relief. And even if that document was fraudulent and even if the judge found her not credible, it's fact-specific and she could have been eligible for convention against torture relief. Okay. Thank you very much. That's an unlikely hypothesis. But what point did you take over the case? Pardon? At what point did you come into the case? We were hired to file an appeal with the Board of Immigration Appeals somewhere maybe 15 or 20 days after her case had been denied in June of 2004. Did you at least consider filing something about the lawyer who had so flagrantly failed to show up? Well, we were not required to. No, you were not required to, but it certainly would have strengthened her position. If you look at Mendoza and Gill, they did not file motions to reopen. And under the lazada, we would have – No, not to reopen. It's something putting this lawyer on the spot for having failed to show up. Are you asking if we were going to file a complaint with the California State Bar against  Yeah. Disciplinary proceedings or something to that effect. No, we didn't. We had considered it. But we had talked to other lawyers about this person's conduct. There had never been a prior complaint against him. And we believed that, like Ms. Villanueva did, that if there had been a good reason for him not to show up, he didn't show up. But it's not required in Mendoza, in Hernandez v. Gill, that we file complaints or that we file motions to reopen. So we did not. Not required, but. Thank you. Okay. Thank you very much. Interesting case. The case of Villanueva v. Mukasey is submitted.
judges: Noonan, Berzon, Smith